Good morning, and may it please the Court. Sonam Henderson for the Appellant, Steven Duarte. I plan to reserve three minutes for rebuttal. I'll watch my clock. There are approximately 20 million Americans with prior felony convictions, many of whom have committed no violent acts. This is a case about whether the government can, consistent with Bruin, permanently strip gun rights from those many prior felons with only nonviolent convictions, without showing that the founders permanently deprived nonviolent prior offenders of the right to bear arms, or otherwise imposed a similar burden on gun rights for a similar reason. In my time today, I want to address three things. First, I want to talk about how broad the power the government is claiming to disarm anyone it deems untrustworthy, non-law-abiding, or irresponsible is, and how that would eviscerate the Second Amendment right and return us to a regime of deference to legislative decision-making. Counsel, before you do that, I'm really interested in your position in light of the concurrence that Justice Kavanaugh and the Chief Justice handed down in Bruin. As you know, I think they referred back to Heller, and they said, let me make sure I get the right quote here, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons, right? Yes, Your Honor. So they're kidding, right? They just meant nonviolent felons. It's not that they're kidding, Your Honor. It's that that's a concurrence. It's not the majority. Without them, there would be no majority. I understand, but someone concurring doesn't have the right to withdraw. How about Justice Alito, who said the same thing, basically? I'm not sure he said the same thing, but as it is, the main opinion of Bruin holds that there's one constitutional test for Second Amendment questions, and that is plaintext and history. So the main opinion says plaintext. But with respect, at least from my perspective, this is a two-part analysis. The first part is, who's covered? The second part is, in what way? And what firearms, et cetera? The first part is, who's covered? And as I look at our earlier case, as John's saying, and I know you take exception, I want to get your view on that, felons are excluded. They're just excluded, and that's Justice Kavanaugh, the Chief Justice, Justice Alito, Justice Amy Coney Barrett. They were necessary to the majority, and all of them, they don't use nonviolent felon. They say felon, because anciently, historically, that's the way it was. So how do we get around that? Again, by looking at the main opinion. I mean, the people opining about how a text and analysis, sorry, a text and historical analysis might come out is different from actually performing the text and historical analysis. But with respect, because we don't have a lot of time, that's why I'm asking these questions now. There were 14 mentions in Bruin about the 14th Amendment only applying to law-abiding citizens. What does that mean? It's 14 mentions of law-abiding and responsible, or some combination of law-abiding and responsible. It's not saying it only applies there. That language comes from Heller, and in Heller it's used to talk about what an easy case that is. They say, they go and they define people, and you're talking about who's in the text and who's out. They define people first, and they define that very broadly. All Americans, all members of the national community. Mr. Duarte, despite being a felon, is still an American. He's a member of the national community. Does that mean that if you have 10 convicted murderers, all of whom are American citizens, that they're entitled in jail to a Second Amendment right? In jail? Yeah. I think you'd get around in jail by custody and by historical practice. I'm sure at the time of the founding, people who were in jail were not allowed to have weapons. And felons go to jail sometimes, don't they? So when they're in jail. We're talking about people who are... You're saying that only when they're in jail? I'm saying when... I am sure there is a historical antecedent for taking weapons from people while they're in jail. I don't see a historical antecedent for keeping weapons from them once they've been restored to their freedom. Well, on the Zhang Tse case, the argument that you make is one that was made in a case called United States v. Phillips. And Phillips concluded that R. Miller v. GAMI did not apply because they did not use the two-step analysis. They knew about Heller and applied it to individuals. Why does Phillips not say that Zhang Tse applies in and controls this case? Because of Bruin, Your Honor. Bruin clarified the Second Amendment analysis. Bruin comes in and says, basically, all of the lower courts are misreading Heller. Bruin, in the first sentence, says, As set forth in the pleadings below, Petitioners Cock and Nash are law-abiding adult citizens of Rensselaer County. How do you define law-abiding? I mean, I don't, Your Honor. I don't think that's the constitutional limit. I think the court is describing these people as being law-abiding and responsible because they're saying this is an easy case. The way they use this in Heller is to say, we don't have to get into levels of scrutiny. We don't have to get into all of this because this is such an easy case. It's a question of law-abiding, don't we? Sorry? It's a qualification. All adult citizens are law-abiding adult citizens. All law-abiding. But, again, the main opinion of Bruin is that you need to look at text and you need to look at plain text. You need to look at history. And there is no plain text analysis that limits the Second Amendment to law-abiding rights. If you look at the text. Counsel, with respect, I don't think you've read Heller either. Because they both talk about law-abiding citizens. Yes, Your Honor. They do talk about law-abiding citizens in Heller. But it's, as I was trying to say, they define people. And they define people broadly. And then when they get to the — They refer to all Americans twice in Bruin. But 14 times law-abiding. So, again, there seems to be a contradiction here. I don't see a contradiction, Your Honor. Again, when they explicitly — Heller explicitly defines the people. And it doesn't define the people as only law-abiding, responsible citizens. It defines the people as all Americans. When it goes on to talk about law-abiding and responsible citizens, it's when it's answering the dissent. The dissent says, how can you do this? How can you do this without telling us about levels of scrutiny? And how come you're not giving us a more fulsome explanation of how the Second Amendment works? Not two levels of scrutiny. Sorry? Young say did not use a level of scrutiny. No. Two-step process. Referred to Heller. Mm-hmm. Said that nonviolent felons were not covered by the Second Amendment. That's our binding precedent. Phillips says it is. Unless Miller v. Gammey allows you to overrule it, it controls this case, does it not? Yes, but I believe under Bruin it's overruled. Because Bruin's — The Miller v. Gammey analysis. That is Miller — Tell me what in Bruin says that our case is overruled. It's just inconceivable that it can continue to have any viability in light of Bruin. Miller v. Gammey says that precedent whose mode of analysis is clearly irreconcilable with intervening Supreme Court case laws overruled. And in what way is it irreconcilable? So Bruin says there's one single analysis for the Second Amendment. Plain text and history. It doesn't say there are two analyses. One is, does it show up on our list of presumptively lawful — or show up on the list of presumptively lawful regulations from Heller? And if it doesn't, then we do text and history. It says text and history. And even in Heller, even in Heller, the Court's saying these are — you know, we're not explaining why we think these things are presumptively lawful now. We'll do that when the case comes before it. And that — But you're skipping to the second prong, in my opinion. Okay. You've got to define who's covered. I don't see how you get from Bruin, where you have four justices that were essential to the majority, all saying the felons are covered. They're all covered. And they're not law-abiding citizens. They have 14 times to refer to that. So if — just arguendo for a moment, okay? If that's correct, then there's no problem, right? They're just — your client's just not covered. If it's correct — I'm sorry, I missed. Which part? Which part is correct? Well, that law-abiding citizens are the only ones covered by the Second Amendment. They assume that. And earlier, in Heller, they talk about felons. So what — how do we get around that? Again, because Bruin is saying you have to do text and you have to do history. And nobody has done — you're talking about who's covered, first step, plain text. Nobody has done a plain text analysis that says felons are not covered. The Supreme Court did, in the sense that they said it's covering law-abiding citizens. But — The boss. They decide. They use the phrasing, law-abiding citizens. But when it comes to the who of the Second Amendment, the operative clause of the Second Amendment, you know, the rights of the people to keep and bear arms shall not be infringed, the who is the people. And they plainly define the people, explicitly define the people. But they accept out felons. But they — they say, they presume. But that's a prediction about a textual or historical analysis that they haven't done yet, Your Honor. Let me ask you this. And then I'm talking a lot here, but it's an important case. Yeah. If — if the Bruin case and the Heller case do not overrule Shaanxi, it controls and you lose, right? If the — if — if Wang Tse is not — is not overruled, then, yes, it controls. I agree with that. I — I — well, if I'm going to — well, I want to hold on to some of my time. But I do just want to speak briefly about how broad a power the government is claiming. It does go to this law-abiding and — and responsible limit. I mean, if — if that's the limit, there's nothing in law-abiding that would limit us to felons, as opposed to misdemeanors, as opposed to scofflaws who litter, speed. There's — there's nothing irresponsible that limits us to lawbreakers at all. I mean, taking on debt, taking on huge amounts of debt, that could be considered irresponsible. Being habitually late is irresponsible. And so if that's the constitutional limit, that leaves a lot of room for a motivated legislature, let's say, you know, the California Assembly, to — to start taking gun rights from people if they decide that that's what the most important thing is. And even the felon thing leaves the motivated legislature with a lot to work with. It came up in range, this idea that the government was asked, you know, if — if the — if the legislature made lawn mowing a felony, if the legislature makes jaywalking a felony, can we take those people's guns away? And the government says, because their rule is felons, yes. And so that — that's very problematic. It leaves a lot of room to — to impose on the Second Amendment and leaves us back with the legislature being the one who's deciding who has a Second Amendment right. And I'll — I'll reserve the rest. Thank you. Very well. Good morning. Good morning. Good morning, Your Honors. Saria Bahadu on behalf of the United States. And may it please the Court. The question before this Court is whether Vanche remains good law. And it does. Bruin instructed courts to look at Heller, to apply Heller, and to apply the history and tradition test in Heller. That is what Vanche does. Bruin also instructed courts to not apply means and scrutiny. Vanche followed that instruction, too. In our view, the simplest path in this case is to hold that Bruin is not clearly irreconcilable with Vanche and that Vanche continues to apply categorically to felons, nonviolent or otherwise. We were told in — in Heller that nothing in our opinion, that's in the Court's opinion, should be taken to cast doubt on longstanding prohibitions of possession of firearms by felons. What are your longstanding prohibitions of firearms by felons in the historical tradition that you put forward to limit the text of the Second Amendment as applied to this individual? The text of the Second Amendment? Yes. As applied? To keep and bear arms. Yes, Your Honor. If, as I understand Bruin, once the conduct fits within the Second Amendment, to keep and bear arms, then the burden becomes the government's to show that there's a historical tradition of longstanding prohibitions on possession of firearms. That's correct, Your Honor. Where are your longstanding prohibitions on bearing firearms by felons? The longstanding prohibitions date back to England, Your Honor. In our brief, we talk about — In the Statute of Northampton? No, not the Statute of Northampton, right, which is going armed to terrorize a community. And I think there's actually the Statute of Northampton from 1328. But in our brief, we really talk about two categories of laws that we think aptly support 922g1. The first category of laws are laws imposing capital punishment on felons and forfeiture on felons. And the laws imposing capital punishment date back to England, right? Blackstone, which courts, especially members of this court, have cited in concurrence in Chauvin as well as a dissental in May, have relied on Blackstone and its commentaries that in England, the penalty for a felony was death. And so, just going from — Let me ask you about that a little bit. Yes, Your Honor. You know, at the very end, I think of — And he talked about range. And in range, I think, if I'm right, they asked the government's counsel, well, why couldn't California — They probably didn't use California. They used their version of California. Why didn't California — Why can't California just say jaywalking is a felony, punished by a year and a day, which will make a year and a day go away somehow? Sure. And then take away everybody's gun rights. So why couldn't you do that? Well, I think — Let me ask you this. Do you think if they made jaywalking a felony, could you say that that person couldn't have — Well, in our view, we think history and tradition support disarming felons because they have committed serious crimes. That's not an answer to my question. Well, right. And I'm going to get there. I'm going to get there. It's really important. People ask me all the time, now that you're a judge, what do you care? As weather advocates, let's add to your question. You're not answering my question because it's a hard question. So let's — So the question is, think of the hardest — You know, the person, your best friend, who's an angel. And whatever that person does, you know, tears a tag off a mattress, suddenly that's a felony. Can that person — Can they ban that person? And I think in range, the government's — And so I assume that you want to be consistent. Of course. So is your answer yes or no? In our view, if a legislature has labeled a crime a felony, then we do think that there's a history and tradition for disarming — But that's — But I will get there. That's good because now we understand. So then that really brings to light the question of, even assuming there was — And I think it's actually a hard question, whether there's a longstanding tradition for felons across — I mean, because you don't actually have any longstanding bans on felons. You have bans on other things. You have putting felons to death. But you're not actually gun bans on felons. But let's just pretend there was. Let's say there was like, you know, you had tons of evidence of actual legislatures at the time of the founding banning felons. But there was no examples of tearing a tag off a mattress as being a felony. Do you see the problem there? The problem is, is if you can — You know, now the legislature can just basically say anything they want as a felony, and they can bypass a constitutional right, just like you could say, you know, there's been a longstanding understanding that fighting words were not — And so now we're going to say that any political speech by pick your party is a fighting word. Mm-hmm. And now all of a sudden the First Amendment goes away. So what is your answer to that problem? The limiting principle, I think, is the question. And there are — there are limitations on legislatures. And I can name a few. Tearing a mattress sounds like it's pretty far down the slippery slope, tearing a tag off a mattress. Well, I can name a few — at least a few limiting principles that I think would apply to legislatures, that this parade of horribles simply would not occur. The first is that there are constitutional limitations. Right? Legislatures cannot over-criminalize because other constitutional provisions would have something to say about it. That's not — that's the Due Process Clause. That's the Equal Protection Clause. That's also the Eighth Amendment. What you're saying is I think there may be a constitutional limit to the fact that they wouldn't be able to make tearing a tag off a mattress punishable by a year or something else, like cruel and unusual or something. Right? But the Second Amendment wouldn't speak to that. But it's possible that they couldn't make tearing a tag off a mattress a felony. Well, I — Or some other constitutional — is that your argument? Just to make sure I understand. Well, I do think that the Second Amendment would have inherent limitations as well. Because we know, for example, that the Second Amendment does — the point of the Second Amendment is not to disarm broad swaths of the American people. But I did want to speak to inherent limitations apart from the Second Amendment. Because I understood the Honor's question to say, putting aside if we don't have exact historical analogs, what is going to keep a legislature in check? And so we do think the Second Amendment does keep the legislature in check, now thanks to Bruin, which has returned us back to Heller, because it's — But to be clear, I think what you're saying is it keeps the legislature in check in the sense if anybody they want to disarm, they have to now label a felon. No, I don't think that's — I don't think that's correct. I think that — I don't think that, for example, 922G has been a part of this country's history since at least 1938. The current — that was its original form, and now we are in the amended form, I think it was in the 1960s.  operating under whether or not they could label something a felony, and they would have knowledge that that would then trigger 922G1. But what they have labeled as a felony since the 1930s is very different than what they label the felony at the founding. And so are you saying that they could change from the founding to the 30s? You know, now we can have felonies for, like, literally filling — I mean, I think they had some fun ones in the brief, some real ones, other than tearing up. But things that seem — like, they certainly wouldn't have been felonies as a felony. But you're saying we're stuck with what we had in the 30s? I don't think you're saying that. No, no. I want to acknowledge that there's a bigger number of felonies than there were in 1791. And we look to 1791 for the principles that would essentially restrain legislatures. I do think that there are principles in the Second Amendment. You're speaking kind of vaguely. I think there's some restraints, but you've got to realize, like, I'm actually trying to say, as a practical matter, it doesn't sound like there's very much. Because going back to what you first conceded, which is, listen, if you want to make tearing a tag off a mattress — if legislature wants to make tearing a tag off a mattress, then we think that that would — make that a felony. Then the Second Amendment doesn't — but then you're speaking about limitations, like, you know, in some vague, abstract terms. But that doesn't sound like much of a limitation. Well, I can give a few more. So I mentioned the constitutional limitations. I also think that there's the political process. Legislatures are a proxy for their people, and we have seen time and time again — I understand that argument. Of course, that's — you could say the same argument about the First Amendment. You could say First Amendment protects, and when the legislature says that you shouldn't be able to, you know, do X or Y, say X or Y, it's been through the political process. Okay, so I get both your arguments. I'm not hearing much. It sounds like the type of — any other right that we would think, like the Fourth Amendment or the First Amendment, those arguments would never fly for those. I mean, those amendments, though, have their own restrictions with respect to felons in particular, too. I mean, under the Fourth Amendment, right, we have felons who are subject to probation. They have lesser rights than the broader swaths of the community. We have felons who are subject to PCRS, which is a very strict form of supervision. I think even under the First Amendment, we do have some felons who are actually subject to lifetime supervised release, and they will have their First Amendment rights curtailed. Can I get back for a second? I know my colleague is a real expert in this and wants to deal with these historical things, but I just want to make sure I understand the government's perspective on one thing. I gather that you contend that Yang Tse controls in this case that Phillips backs that up, and the only way it gets overruled is if we have an en banc court that changes it. Is that correct? Yes, correct in part. Vang She remains controlling precedent. But I would say that Bruin is not clearly irreconcilable. That's my point. In other words, the government's position that Yang Tse is not clearly irreconcilable with either Heller or Bruin, and if that's the case, the only way Yang Tse can be overturned because it covers nonviolent felons is to have an en banc court. We can't do it as a three-judge panel. Is that your position? That's our position, and I just want to say that if this case did go en banc, we would again be relying on Bruin to say that this court's precedent has been in line with Bruin as well as Heller. The two-part argument is Bruin hasn't abrogated our precedent, and even if it somehow had, you win anyway. Can I take you back to Judge Smith's? Absolutely. The challenge with that position is... What was the case that Boxcay relied on? It relied on Everist. It relied on Younger. It relied on Everist, Emerist. It relied on a couple of cases, actually. So Boxcay clearly relied on Younger and literally said that Heller has not abrogated Younger. And so the thing we're saying is binding has gone through two iterations of pretty serious Supreme Court changes. One is Heller, which said not a collective right, but it's an individual right, whereas Younger said it was a collective right. And then there was Bruin, which said he had two steps. It's not a two-step thing. You've got to look at history and tradition, period. So those are pretty significant changes. Everybody, I think, recognizes that. And yet you're saying that a decision... Really, it's not Boxcay. It's Younger, because Boxcay relies very heavily on Younger. That Younger predates both those very serious... So that still just binds clear through. That just sounds like, what does the Supreme Court have to do? Does it have to literally name Boxcay or Younger by name in its decision to abrogate them? Can I join in this question? Sure. Because I think we both have the same issue. The Phillips case analyzed the very thing that he's talking about, where Heller had been decided, the argument was made by Learned Counsel for the Defense that Heller overruled because of reliance on Younger. They said, no, that's not true. If you're going to change it, you've got to have an en bas. At least for our court's purposes, the Younger aspect is not going to change anything. The question is whether Bruin perhaps changed it. What's the government's position on that? I think I have two points that I do want to make. In Boxcay, it did point to Younger, but it explained that when it was saying it was bound by Younger, it cited Osborne, which explained that this court is bound by holdings, not reasoning. The second thing that I did want to say as well is that Boxcay did not just rely on Younger. What does that mean? I read that. Because the problem with that is, does that mean that the Supreme Court has to have precisely a nonviolent felon case? Otherwise, we're just bound. It doesn't matter how much its decision, let's say, completely undermines. I know you're not going to see this, but completely undermines the reasoning. But it's not a nonviolent felon case. It has to be a nonviolent felon case? It has to be clearly irreconcilable. I think this Court has gone so far as to say it has to compel a different conclusion to be irreconcilable. Let's say the rationale is completely irreconcilable, but the holding is not, because it's not a nonviolent felon case. That's what I'm trying to get at. Let's assume for the sake of argument the rationale is completely irreconcilable. In the first case, it was a judge that said, I had an epiphany last night. God told me that you lose. And the Supreme Court says, you can't do that. Judges can't have epiphanies from God and rule that way. But it's a different type of case. Does the epiphany holding from the Supreme Court abrogate our precedent, or can you say, there's an epiphany rationale? Or do you say, no, it was a different type of case? So the Supreme Court's got to address that kind of case, or we're going to keep having epiphanies. I think that would be incredibly hard to defend, I would say. But I actually would look to Vonshay, because Vonshay pointed to Younger, and it said... You literally have two stages of the Supreme Court completely making a sea change in Second Amendment law. And you were arguing the precedent that goes clear back to that. And I understand, and I hope Judge Smith will let me finish my question. I understand that his position is, or at least you could make the argument that Phillips takes care of all the Heller stuff. So the first of the two stages is... But still, you have two stages here of very different changes. And to say, that doesn't change anything. Can you see how people would be like, well, what does the Supreme Court have to do? I guess they have to name cases or judges by name? No, I think, and I can see your point, I do. And I actually think Vonshay recognized that point by not only relying on Younger. It didn't say, oh, Younger, the holding, we're done. It then looked at other gun regulations, other gun restrictions. It looked at other cases from around the country, including Fifth Circuit decisions, that did look at the Second Amendment. The Fifth Circuit decision, that actually specifically wasn't the old two-step. The Fifth Circuit decision had applied the two-step balancing test that Bruin got rid of. So that's a problem, isn't it? Well, no. Vonshay relied on Everest and Emerson. But if you look at those decisions closely, one of them, I believe it was Emerson. They both have Es. But Emerson, it does talk about tailoring, but it's very clear when it says that felon dispossession is clearly consistent with the Second Amendment as historically understood. So both of those decisions do speak about history in the way that Heller and the way that Bruin call for. And Vonshay, I make the point mainly to say that Vonshay didn't simply say younger, we're done. Vonshay looked at Heller, which of course had its own historical analysis and consideration. It looked at other gun restrictions, other cases from around the country, and it also looked at what modern scholars were thinking at the time. I see that my time is up, unless the Court has any further questions. All right. Thank you very much. All right, Counsel. Mr. Henderson, you have a little time left. Thank you, Your Honor. So I want to just start by pushing back on this idea that Vonshay did historical analysis the way that Bruin required. Vonshay has a brief mention of historical analysis. It doesn't ignore it entirely. Does it need to? I mean, it depends on whether you think it has a plain text analysis that excludes... Again, as I look at it, there's a two-part analysis. Number one was covered and secondly, in what way? And you've got at least four members of the Supreme Court in the majority that say felons aren't covered and law-abiding Americans are covered. What's your answer to that? Again, Bruin lays out how you tell who's covered. You tell who's covered by looking at the plain text. Nobody's looked at the plain text and explained why the plain text excludes anyone who's not law-abiding and responsible. That analysis didn't occur in Heller. You think law-abiding American is a plain text analysis and you have to go through the historical analysis to make that determination, right? If you're saying that it's step one and that non-law-abiding, non-responsible people are not covered, what Bruin tells us is that has to be done via the plain text. Does the plain text cover the conduct? I think the answer is very clear in Heller because the who of the plain text is the people. Why then did Justice Kavanaugh, joined by the Chief, say that nothing that they're saying in Bruin is intended to overturn the concept from Heller that felons aren't covered? That may express some level of discomfort with where the logic of the majority opinion is going. I understand. Either one of them, you don't have a majority. But what the majority actually says is text and history. And whatever discomfort some members of the majority may feel about that, and however they may express that, as long as they've signed on to the majority opinion, the majority says... Do you think Kavanaugh was saying he thinks mattress label tearing felons are covered when he said that?  I guess another way of saying it is you think he has an idea of... I mean, I guess what I'm struggling with is when he says, I don't think this puts a means that the felon exception is gone, obviously built into that is some concept of what felon includes. I don't know. It's hard to read that one sentence as being oh, that must be anybody in the legislature in the government's position, which is anybody in the legislature says he's a felon. Swearing on the radio, whatever. Right. Yeah. I don't imagine that's what he means. I don't know what he means. I don't know how the Heller majority was planning to get to... What I'm getting at is if a person was to say, if a person was to conclude that nonviolent felons were included under history and tradition, that's not necessarily inconsistent with the concurring judges saying that felons are included because some felons could still be included. Yes. Actually, yes. You're right, Your Honor. No felons are included. In some ways, you're not in one important sense fighting with Kavanaugh and the Chief and others. Not completely. I suppose I'm not fighting for getting to what the outer range of felonies if you're looking at some core set of felonies. Your argument I think, as I understand it, is simply that it doesn't necessarily need to be at the most broadest level of what... The fact that they said that doesn't necessarily need to be at the broadest level. Is that accurate? If they said that, they didn't get to it. They didn't finish it. Now we just deal with felons. Right? Now we're dealing with what to do with felons. There's some notion of felons, but as Judge Van Dyck has pointed out, what is a felon? They always tell us that we're not supposed to anticipate what they're going to do. Where are we on that, then? I would say you are reading the majority opinion for what it says, which is text and history, and doing that text and history analysis, which I believe takes us to nonviolent felons. Your position is that long-standing prohibitions on possession have to go back to the colonial times. What Bruin and Heller say is that it has to be the understanding... If it was done in 1900, that wouldn't be long-standing. That is not long-standing for the purposes of the Second Amendment. Other questions about my colleague? We could talk about this forever, as you know, but in any event, thanks, both counsel, for your arguments. They've been very helpful. Very well. The case of United States v. Duarte is submitted.
judges: BEA, SMITH, VANDYKE